OPINION
{¶ 1} Defendants-appellants, Eleanor Naylor and Barium 
Chemicals, Inc., appeal from a Jefferson County Common Pleas Court decision finding Mrs. Naylor in both civil and criminal contempt for failing to comply with the court's April 19, 2002 order.
 {¶ 2} Barium Chemicals, Inc. ("BC") is a family-owned corporation located in Steubenville, Ohio, engaged in the production and sale of specialty chemical products. Mrs. Naylor and her brother, plaintiff-appellee, Albert Pavlik Jr., evenly own BC's shares. Mrs. Naylor, Pavlik, and their spouses, Douglas Naylor and Eleanor Pavlik, comprise the board of directors. Naylor and Pavlik are vice-presidents of BC. Naylor additionally serves as secretary, Pavlik as treasurer, and Mrs. Naylor serves as assistant-treasurer.
 {¶ 3} With the board being split between the Pavliks and Naylors and there being no president, but rather two vice-presidents, the corporation has experienced a series of internal managerial disputes. One dispute involves the employment status of Pavlik's daughter, Virginia Exley. In 1993, Pavlik hired Ms. Exley as his assistant in BC's sales department, and began paying her BC funds approximating $36,000 annually. The corporation, appellants contend, never authorized her hiring, nor approved a salary for her.
 {¶ 4} In 1994, Albert Daniel Pavlik, Pavlik's son, sued BC in an unrelated matter for back wages. As a result of this litigation, a settlement agreement was reached in 1996 between BC, the Naylors, the Pavliks, and several Naylor and Pavlik children who worked at BC. This 1996 agreement, in part, required that Ms. Exley be paid on a going forward basis, subject to appellants' objections, but stated that the parties did not waive or resolve any issues as to the propriety of these payments. The 1996 settlement agreement was made subject to the court's review for enforcement, and certain violations were addressed thereafter. As a result of one of these violations, Pavlik was enjoined from writing corporate checks for any payroll purpose.
 {¶ 5} Following the settlement agreement, Mrs. Naylor would not allow anyone to issue checks to Ms. Exley because, appellants contend, she was not a BC employee. The trial court, in response, issued an order on April 4, 1997, holding in pertinent part:
 {¶ 6} "With respect to the Naylors being the only ones permitted to write payroll checks as set forth in its last Order, said Order is modified to the extent that Albert Pavlik, Jr., may write payroll checks to Virginia Exley in view of the Naylors [sic.] position that she is not a proper employee of the corporation. However, the said Albert Pavlik, Jr., shall provide the Naylors with the amount of the checks and withholdings immediately upon issuing the same."
 {¶ 7} The court clarified its order nunc pro tunc in an April 16, 1997 judgment entry.[1]
 {¶ 8} At the time of the 1996 settlement agreement, BC had its primary checking operating account at Key Bank. In the summer of 2001, Pavlik ran out of checks. Pavlik never informed Mrs. Naylor of this, nor did he ask her to re-order another set for him. When Pavlik encountered problems obtaining a new checkbook, Key Bank, in June 2001, advised the parties that unless they were in agreement regarding the handling of checkbooks, Key Bank would close BC's checking account. Mrs. Naylor asked Pavlik to attend a board of directors meeting to discuss the Key Bank account. Pavlik told her he would not attend and thereafter Key Bank closed BC's account.
 {¶ 9} On June 25, 2001, Mrs. Naylor moved BC's funds to Sky Bank where BC had an existing account on which Mrs. Naylor was the sole signatory. Mrs. Naylor opened a checking account that also listed her as the sole signatory. She presented a corporate resolution to the bank, stating the account had been approved at a board meeting. But no such meeting was held. Pavlik disputed his not being a signatory on the account, and after complaining to Sky Bank, Sky Bank advised BC that if its internal management dispute regarding the handling and authority on the account were not resolved, Sky Bank would close BC's account. After being so advised, Mrs. Naylor repeatedly asked Pavlik to attend a board meeting to resolve the matter. But Pavlik failed to reply. On December 27, 2001, Pavlik issued a letter to Mrs. Naylor agreeing to discuss the Sky Bank situation if other certain points were also discussed.
 {¶ 10} Pavlik wrote a memo to Mrs. Naylor stating that any resolution of the checking account must include provisions providing that no stop payment orders could be issued unless agreed to by all signatories on the account. On January 8, 2002, Pavlik submitted a memo and proposed resolution to Mrs. Naylor, which again provided that no stop payment orders be issued without both of their signatures, and further provided that all checks Pavlik himself had previously written on the Sky Bank account, and which had since been dishonored, would be reinstated and paid.[2]
 {¶ 11} On January 18, 2002, Pavlik filed a motion for contempt seeking, among other things, to compel the enforcement of the April 4, 1997 order, which permitted him to write payroll checks to Ms. Exley. Appellants also filed a contempt motion against Pavlik for failing to comply with prior court orders.
 {¶ 12} The court held a hearing on the contempt motions on April 17, 2002. On April 19, 2002, the court found Mrs. Naylor in contempt for opening a corporate checking account that precluded Pavlik from writing checks, including payroll checks to Ms. Exley. The court ordered the board to hold a meeting to adopt a resolution necessary to conduct corporate banking business with Mrs. Naylor and Pavlik as signatories, give Pavlik sufficient payroll checks to enable him to pay Ms. Exley, and ratify payments made by Mrs. Naylor or Pavlik on behalf of the corporation and for Ms. Exley since June 25, 2001. The court also found Pavlik in contempt for failing to attend a board meeting and failing to vote for distribution of funds owing to BC's officers. The court ordered Pavlik to attend the board meeting, review the financial status of the corporation, and vote on accrued compensation.
 {¶ 13} On April 23, 2002, appellants filed a notice of appeal. On June 13, 2002, we dismissed the appeal for lack of a final appealable order, holding that unless contempt penalties were imposed, the order was not final.
 {¶ 14} On July 11, 2002, Pavlik brought a subsequent motion for contempt against Mrs. Naylor, seeking to compel her compliance with the April 19, 2002 judgment entry. The court held a hearing on the motion and found Mrs. Naylor failed to comply with the April 19, 2002 entry. The court provided Mrs. Naylor with another opportunity to purge herself of contempt and ordered her to report to the court at 10:00 am on August 13, 2002. Mrs. Naylor appeared before the court and indicated that she had not complied with the court order, nor did she intend to. Thereafter, the trial court found Mrs. Naylor guilty of criminal and civil contempt, fined her $250, and further ordered her incarcerated until such time as she agreed to comply with the court's order to place Pavlik on the corporate operating account and to comply with the court's April 19, 2002 order.
 {¶ 15} On August 13, 2002, appellants filed their timely notice of appeal and an emergency motion for stay pending appeal. This court sustained appellants' motion for stay.
 {¶ 16} Appellants raise 17 assignments of error, the first of which states:
 {¶ 17} "THE LOWER COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT AFTER MR. PAVLIK'S PRESENTATION OF HIS CASE."
 {¶ 18} At the April 17, 2002 contempt trial, Pavlik called one witness, Sheryl Boyd, a Sky Bank employee. Ms. Boyd established that BC had a checking account at Sky Bank, and that Pavlik was not an authorized signatory on the account. Pavlik then rested his case. Appellants moved for a directed verdict, contending that Pavlik failed to meet his burden of proving contempt by clear and convincing evidence.
 {¶ 19} Civ.R. 50(A)(4) provides the standard for courts to apply when a party has moved for a directed verdict. It states:
 {¶ 20} "When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).
 {¶ 21} Additionally, a trial court may not weigh the evidence or try the witnesses' credibility in deciding a motion for directed verdict. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66. Rather, the trial court assumes the truth of the evidence that supports the facts essential to the non-moving party's claim, thereby giving the non-moving party the benefit of all reasonable inferences. Id. The trial court must determine only whether any evidence of substantive, probative value exists in support of a party's claim. Id.
 {¶ 22} This court reviews the grant or denial of a directed verdict de novo. Abbott v. Jarrett Reclamation Serv., Inc.
(1999), 132 Ohio App.3d 729, 738.
 {¶ 23} At the contempt hearing, Pavlik argued that Mrs. Naylor had violated the terms of the April 4, 1997 court order, which mandated that he be permitted to write payroll checks to Ms. Exley. Ms. Boyd's testimony evidenced the fact that Mrs. Naylor had opened a checking account with Sky Bank in June of 2001, and that Pavlik was not a signatory on that account. Viewing this testimony in the light most favorable to Pavlik, there is sufficient, probative evidence that, in not making him a signatory on the Sky Bank account, Mrs. Naylor effectively violated the trial court's April 4, 1997 order. In other words, the showing that Pavlik was not able to write checks from the corporate checking account at least suggests that Mrs. Naylor was acting in violation of the court order providing that he be permitted to write payroll checks.
 {¶ 24} We note though, that the trial court also cited Section 2.1 of the May 24, 1996 settlement agreement[3] and BC's code of regulations. The trial court merely referenced them to establish the fact that Ms. Exley was to be paid by the corporation, regardless of her questionable employment status, and that Pavlik, as treasurer, must have the ability to write checks. The final determination of contempt, however, is predicated on Mrs. Naylor's violation of the April 4, 1997 order. The trial court's April 19, 2002 judgment states:
 {¶ 25} "With respect to the Motion of the Plaintiff, the Court finds Eleanor Naylor to be in contempt of Court for opening corporate accounts in a manner that would preclude the Plaintiff, as Treasurer of the Corporation from writing certain corporate checks, including payroll checks."
 {¶ 26} Additionally, at the April 17, 2002 hearing, Pavlik stated that his motion for contempt "simply goes primarily to the issue of whether or not Mrs. Naylor has violated the terms and conditions of this Court's prior order; in particular the April 4, 1997 order." (4/17/02 Tr. 6).
 {¶ 27} Because Pavlik presented sufficient evidence to support his contempt motion under the April 4, 1997 court order, appellants' first assignment of error is without merit.
 {¶ 28} Appellants' second assignment of error states:
 {¶ 29} "The lower court erred in finding mrs. naylor in contempt when she did not violate any court order."
 {¶ 30} Appellants urge that the April 19, 2002 and August 14, 2002 orders clearly state that Mrs. Naylor was in contempt not because she violated a court order, but rather because she opened an account without including Pavlik as a signatory thereon, in violation of his authority as treasurer and in contravention of BC's code of regulations. Appellants note that a party cannot be held in contempt of court unless it violates specific provisions of a court order. O'Connor v. O'Connor (1991),71 Ohio App.3d 541, 545. Further, appellants contend, it was only because of Pavlik's refusal to attend a meeting that the board was unable to address the issues before the court.
 {¶ 31} A trial court possesses broad discretion in contempt proceedings. Dozer v. Dozer (1993), 88 Ohio App.3d 296, 302. Decisions in contempt proceedings will not be reversed on appeal absent an abuse of discretion. Durst v. Durst, 3d Dist. No. 13-02-38, 2003-Ohio-2029, at ¶ 15, citing Denovchek v. Bd. ofTrumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16. An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 32} While the trial court noted that Mrs. Naylor's omission in failing to add Pavlik as a signatory on the Sky Bank account was in contravention of BC's code of regulations and of appellee's position as treasurer of the corporation, we note again that the trial court held Mrs. Naylor in contempt for violating its April 4, 1997 order.
 {¶ 33} The April 16, 1997 order cited by Pavlik clarified the court's April 4, 1997 order. In part, the April 16, 1997 order reiterated that Pavlik had court authorization to pay Ms. Exley. While appellants correctly note that no order explicitly requires that they issue new checkbooks to Pavlik whenever his supply runs out or that they add him as a signatory to any new accounts, the orders do require that Pavlik be able to write payroll checks to Ms. Exley. Therefore, these orders require that Pavlik have access to corporate money in order to pay Ms. Exley. It is logical that he would need access to the corporate checking account.
 {¶ 34} At the April 17, 2002 hearing, Pavlik provided evidence that he could not write checks or draw money from the Sky Bank account. This evidence demonstrated appellants were in violation of the April 4, 1997 and April 16, 1997 court orders. Because the trial court's April 19, 2002 order compelling appellants to add Pavlik as signatory to appropriate accounts and to issue payroll checks to him are based upon Mrs. Naylor's violation of the April 4, 1997 court order, the trial court acted within its discretion. Therefore, appellant's second assignment of error is without merit.
 {¶ 35} Appellants' third assignment of error states:
 {¶ 36} "The lower court erred in holding mrs. naylor in contempt for not reversing stop payments placed on check [SIC.] by sky bank and in ordering mrs. naylor to cause or allow all such checks dishonored by sky bank to clear when the court expressly stated at the hearing such matter was not before the court."
 {¶ 37} Appellants argue that the trial court's April 19, 2002 judgment is erroneous regarding its order that Mrs. Naylor ratify Pavlik's dishonored checks because the trial court expressly held that this matter was not at issue. Appellants direct us to the following exchange with the trial court during Pavlik's testimony:
 {¶ 38} "Q Are you contending that Mrs. Naylor is in contempt for stopping payment on any checks that you have written that were not to Virginia Exley?
 {¶ 39} "A [Pavlik] Repeat that.
 {¶ 40} "THE COURT: Sustained. That's not in the motion.
 {¶ 41} "MR. MANN: It's one of the branches.
 {¶ 42} "THE COURT: No it isn't; not in his motion. His motion is strictly for contempt for not putting him on an account. Not for stopping payment or anything." (4/17/02 Tr. 39).
 {¶ 43} Appellants conclude that it was error for the trial court to hold that there was no contempt motion regarding the non-payroll checks that Pavlik wrote, to preclude appellants from asking questions on the subject, and to then hold Mrs. Naylor in contempt on the basis that she stopped payment on these checks, ordering her to ratify all of the dishonored checks.
 {¶ 44} The trial court's April 19, 2002 order found Mrs. Naylor in contempt "for opening corporate accounts in a manner that would preclude the Plaintiff [Pavlik], as Treasurer of the Corporation from writing certain corporate checks, including payroll checks." The trial court never held Mrs. Naylor in contempt for stopping payment on checks as appellants allege. Nor did the court order Mrs. Naylor to honor checks written by Pavlik. Instead, the court ordered the board of directors to ratify "any actions taken with respect to payment of bills by either Eleanor Naylor or Albert Pavlik, Jr., for and on behalf of the Corporation as well as any actions taken with respect to Virginia Exley since June 25, 2001."
 {¶ 45} Therefore, we cannot say the court abused its discretion when it did not allow appellants to ask Pavlik whether he contended Mrs. Naylor was in contempt for stopping payment, since it never held Mrs. Naylor in contempt for stopping payment on certain checks. Appellants' third assignment of error is without merit.
 {¶ 46} Appellants' fourth assignment of error states:
 {¶ 47} "The lower court erred in refusing to allow barium and mrs. naylor to establish that mr. pavlik had no right to pay virginia exley as she is not an employee of barium."
 {¶ 48} Appellants contend that if they could have established that Ms. Exley is not an employee of BC, Pavlik would have no right to pay her. Therefore, there would be no reason for appellants to give him a checkbook or add him as a signatory on the corporate checking account. However, appellants note, the trial court admitted no evidence regarding Ms. Exley's employment status. Because appellants argue they have a valid legal defense in their contention that Ms. Exley is not a BC employee, they conclude that the trial court erred in preventing them from raising this defense to the contempt action.
 {¶ 49} In a June 13, 2002 journal entry, this court stated, "should the parties fail to act in accordance with the order, and a fine or jail sentence follow, an appealable order would then result. Even then, the issue of the employment status of Virginia Exley, which has not been adjudicated at any level, would not be an issue in the appeal." Thus, appellants' fourth assignment of error is moot.
 {¶ 50} Appellants' fifth assignment of error states:
 {¶ 51} "The lower court erred in holding mrs. naylor in contempt when mr. pavlik rendered impossible any ability to place him on an account through his refusal to attend a board meeting."
 {¶ 52} Appellants argue that Mrs. Naylor repeatedly attempted to coax Pavlik to attend a board meeting to address the problems with the Sky Bank account. But Pavlik never responded to any of Mrs. Naylor's memos. Therefore, appellants conclude, because a board meeting was necessary in order to add a signatory to the account, Pavlik rendered it impossible for appellants to address any of the issues cited in the contempt motion. Appellants argue that the law provides that where performance of an order is beyond the party's ability to perform, such non-performance cannot serve as a basis for holding such party in contempt. Citing, Nielsen v. Meeker (1996), 112 Ohio App.3d 448; In rePurola (1991), 73 Ohio App.3d 306, 313; Courtney v. Courtney
(1984), 16 Ohio App.3d 329.
 {¶ 53} The evidence presented at the April 17, 2002 hearing shows Mrs. Naylor submitted memos to Pavlik concerning holding a board meeting to discuss the Sky Bank account dispute. It was also evidenced that he did not respond to these memos. But Mrs. Naylor never called a board meeting. In his testimony, Pavlik repeatedly emphasized that Mrs. Naylor never formally called a board meeting. (4/17/02 Tr. 42, 44, 51, 54). He testified he told Mrs. Naylor that if she called a meeting, he would attend it. (4/17/02 Tr. 42).
 {¶ 54} Accordingly, the trial court acted within its discretion in holding Mrs. Naylor in contempt. Appellants' fifth assignment of error is without merit.
 {¶ 55} Appellants' sixth assignment of error states:
 {¶ 56} "The lower court erred in refusing to allow and consider evidence of other accounts from which mr. pavlik could pay virginia exley."
 {¶ 57} Appellants direct our attention to the trial court's April 19, 2002 order, which states, in part:
 {¶ 58} "Although the [contempt] Motion is not specific with respect to requiring Plaintiff to be made a signatory on the corporate account at Sky Bank, the inability of the Plaintiff to be able to comply with Paragraph 2.1 of the Settlement Agreement [the section providing for payments to Ms. Exley] would, by inference, show that this was the intent of the Motion."
 {¶ 59} Appellants contend that this passage demonstrates the trial court's recognition that Pavlik's contempt motion was predicated upon his inability to pay Ms. Exley. However, appellants continue, the trial court excluded evidence at the hearing that BC had other accounts, besides its operating account at Sky Bank, on which Pavlik was an authorized signatory, and from which he could pay Ms. Exley. They conclude the trial court erred in not allowing them to present evidence of these other accounts.
 {¶ 60} The decision to admit or exclude evidence rests in the trial court's sound discretion and we will not reverse its decision absent an abuse of that discretion. Wightman v.Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 437.
 {¶ 61} Pavlik had only one checkbook. That checkbook was for the corporate operating account with Key Bank. When the corporate operating account was closed at Key Bank, Mrs. Naylor opened a new corporate operating account with Sky Bank, without adding Pavlik as a signatory. From that time forward, Pavlik had no checkbook from which to write corporate checks.
 {¶ 62} Appellants fail to recognize that, while paragraph 2.1 of the 1996 settlement agreement simply requires that Ms. Exley be paid by BC on a going forward basis, the April 4, 1997 court order authorizes Pavlik to write payroll checks for this purpose. Because the only checkbook is for the corporate operating account at Sky Bank, appellants' contention that Pavlik may pay Ms. Exley from other accounts is irrelevant, as he is not able to write checks from them.
 {¶ 63} At the April 17, 2002 hearing, appellants attempted to present evidence of other accounts that Pavlik had access to. Appellants questioned Pavlik about whether he had tried to use one of BC's other accounts to pay Ms. Exley. Pavlik responded "no." (4/17/02 Tr. 88). Appellants then asked Pavlik if he was a signatory on any of BC's other accounts. The court sustained Pavlik's objection to this question. (4/17/02 Tr. 89). The other accounts to which appellants' counsel referred were not checking accounts. (4/17/02 Tr. 88). The trial court concluded that the Sky Bank account was the only account from which payroll checks could be issued. (4/17/02 Tr. 89). Thus, it was within the court's discretion to exclude testimony about non-checking accounts. Accordingly, appellants' sixth assignment of error is without merit.
 {¶ 64} Appellants' seventh assignment of error states:
 {¶ 65} "The lower court erred in holding the sky bank Account was not valid and/or not properly authorized."
 {¶ 66} Appellants note that in the April 19, 2002 and August 14, 2002 orders, the trial court held that the opening of the Sky Bank account was unauthorized. Appellants contend that the trial court used this finding as a basis for contempt, holding that the allegedly improper opening of the account without Pavlik as a signatory violated Ohio law regarding the authority of a corporate treasurer, and further violated BC's code of regulations. Appellants contend they established that Mrs. Naylor had proper board authorization to open an account in 1996, which was originally a savings account. (4/17/02 Tr. 44-45). Appellants next contend that in 2001, when Mrs. Naylor converted this savings account into a corporate checking account, no additional corporate resolution or board authorization was required. In the alternative, appellants contend that even if the account in dispute was not properly authorized, the corporation through Pavlik's acquiescence, ratified it. Appellants cite to Pavlik's testimony affirming the fact that he received paychecks from the disputed account and he never claimed that they were drawn from an unauthorized account. (4/17/02 Tr. 44-45).
 {¶ 67} Appellants' argument is irrelevant to the court's final April 19, 2002 and August 14, 2002 determinations. Appellants correctly note that the trial court determined that the Sky Bank checking account was unauthorized, but err in their argument that the trial court used this somehow as a basis for contempt. As we have noted previously, the trial court's April 19, 2002 order is predicated on Mrs. Naylor's violation of the April 4, 1997 order. Whether or not the Sky Bank account was properly authorized, the fact still remains that there was sufficient evidence before the trial court to make the determination that, in not adding Pavlik as a signatory on the account, Mrs. Naylor effectively eliminated his only means to write payroll checks for Ms. Exley, thereby violating the April 4, 1997 order. Thus, appellants' seventh assignment of error is without merit.
 {¶ 68} Appellants' eighth assignment of error states:
 {¶ 69} "The lower court erred in ordering unreasonable Purge conditions."
 {¶ 70} Appellants argue that the purge conditions were unreasonable because there was no order under the 1996 settlement agreement that Pavlik must have a checkbook or that Mrs. Naylor must ratify his dishonored checks.
 {¶ 71} A trial court abuses its discretion when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet. Burchett v. Miller (1997),123 Ohio App.3d 550, 552. The determination of whether a particular purge condition is unreasonable or impossible varies on a case-by-case basis. Schuman v. Cranford, 4th Dist. No. 02CA571, 2003-Ohio-2117, at ¶ 11. The contemnor bears the burden of presenting sufficient evidence at the contempt hearing that the trial court's purge conditions are unreasonable or impossible for the contemnor to meet. Id.
 {¶ 72} In the case at bar, appellants failed to demonstrate that Mrs. Naylor cannot comply with the purge conditions. Instead, they argue that because no court order required them to do any of the things that the trial court ordered, these purge conditions are unreasonable. In setting the purge conditions, the trial court used its discretion to order Mrs. Naylor to add Pavlik as a signatory on the disputed account, give him a sufficient supply of checks, and ratify all of his previously dishonored checks. In doing so, the trial court did not order any condition that Mrs. Naylor cannot perform. Moreover, all of the purge conditions are reasonably related to remedying Mrs. Naylor's violation of the April 4, 1997 order authorizing Pavlik to write payroll checks to Ms. Exley. Adding his name to the disputed account will give him access to corporate funds so he can pay Ms. Exley. The issuance of a checkbook will provide him with a means to write these payroll checks. And the ratification of his dishonored checks will reasonably address the fact that the checks he issued to Ms. Exley have been dishonored, thereby depriving Ms. Exley of her corporate salary. Therefore, appellants' eighth assignment of error is without merit.
 {¶ 73} Appellants' ninth and tenth assignments of error share a common basis in law and fact. Thus, we will address them together. They state:
 {¶ 74} "The lower court erred in requiring mrs. naylor to pay barium's attorney fees."
 {¶ 75} "The lower court erred in ordering mrs. naylor to pay mr. pavlik's attorney fees."
 {¶ 76} As to BC's attorney fees, appellants contend that Mrs. Naylor was acting under court order that allowed her to retain legal counsel for BC. Appellants direct our attention to the trial court's May 12, 1995 order, authorizing BC to retain counsel to represent the corporation. Additionally, appellants continue, their right to appoint and have BC pay for counsel in this matter was reiterated in the trial court's August 20, 1996 order, which authorized the Naylors to hire counsel for BC if they believed in good faith that Pavlik's actions were contrary to the settlement agreement. Appellants argue this order has never been revoked. Therefore, they conclude, Mrs. Naylor had the right to hire counsel for BC to defend the current proceedings.
 {¶ 77} As to Pavlik's attorney fees, appellants argue that Mrs. Naylor should not have been found in contempt and therefore should not have been required to pay Pavlik's legal fees.
 {¶ 78} "A trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt." State ex rel. Fraternal Order ofPolice v. Dayton (1977), 49 Ohio St.2d 219, paragraph one of the syllabus. It is within a trial court's discretion to include attorney fees as part of the costs taxable to a defendant found guilty of civil contempt. Planned Parenthood Assn. ofCincinnati, Inc. v. Project Jericho (1990), 52 Ohio St.3d 56,67.
 {¶ 79} Turning first to appellant's argument concerning BC's attorney fees, the trial court's May 12, 1995 order authorized BC to retain counsel to defend a suit. The August 20, 1996 order authorized the Naylors to retain counsel for BC, and further provided BC was to pay its own legal fees. Appellants, however, fail to note the original context of these orders. The May 12, 1995 order authorized the Naylors to retain counsel for BC "for the purpose of defending this suit." But "this suit" did not refer to the contempt proceeding at bar, but rather to the 1995 lawsuit brought by Pavlik's son for the payment of back wages.
 {¶ 80} The August 20, 1996 order appellants cite to provides that:
 {¶ 81} "[I]f members of the Naylor family have a good faith reason to believe that actions are being taken by the Pavlik family members that is [sic.] contrary to the Settlement Agreement or not in the best interests of the corporation, said family members have the right to designate and retain counsel to act on behalf of the corporation with said services to be paid for by the corporation."
 {¶ 82} Since, as we will explain later, appellants had a good faith reason to believe that Pavlik was taking actions contrary to the settlement agreement, Mrs. Naylor had the authority to retain counsel on BC's behalf to be paid for by BC. Thus, appellants' ninth assignment of error has merit.
 {¶ 83} Finally, turning to appellants' argument regarding the payment of Pavlik's attorney fees, we note that the trial court held Mrs. Naylor in civil contempt on both April 19, 2002 and August 14, 2002. We also note that, based on the preceding assignments of error, the trial court's judgment is valid. Therefore, because a trial court has the discretion to include reasonable attorney fees as a part of costs taxable to a defendant guilty of civil contempt, the trial court did not abuse its discretion in ordering Mrs. Naylor to pay Pavlik's attorney fees. Accordingly, appellants' tenth assignment of error is without merit.
 {¶ 84} Appellants' 11th assignment of error states:
 {¶ 85} "The lower court erred in ordering mrs. naylor to violate her fiduciary duties to the corporation."
 {¶ 86} Appellants argue that, as an officer of BC, Mrs. Naylor owes fiduciary duties to the corporation, including the duty to prevent corporate waste and misappropriation of funds. Appellants argue that by ordering Mrs. Naylor to place Pavlik on the operating account, knowing that he will use such position to misappropriate corporate funds by transferring money to Ms. Exley or use BC funds for his property, the trial court effectively directed her to violate her fiduciary duties.
 {¶ 87} Appellants' allegations regarding Pavlik are unsupported by the record. It is important to note that neither the issue of Ms. Exley's employment nor appellants' allegation that Pavlik improperly used corporate funds to purchase property has ever been litigated, nor do they present separate issues before this court. At the April 17, 2002 hearing, the trial court repeatedly stated that the employment status of Ms. Exley was not at issue and no evidence on the matter was presented. Regarding Pavlik's property, appellants never raised, nor did the trial court address, this issue. Appellants, therefore, failed to present any evidence to the trial court that would support a finding that Pavlik would misappropriate corporate funds once given access to them. The trial court articulated as much in its August 14, 2002 order stating, "[a]lthough the said Eleanor R. Naylor is of the belief that the use of this account by the Plaintiff was for his own personal gain, to the knowledge of this Court there has never been presented any evidence to show an independent audit to support this belief nor any Court decision finding this to be so."
 {¶ 88} Because appellants failed to present sufficient evidence to support their contention that the purge conditions effectively required Mrs. Naylor to violate her fiduciary duties, the trial court acted within its discretion in ordering the purge conditions. Appellants' 11th assignment of error is without merit.
 {¶ 89} Appellants' 12th assignment of error states:
 {¶ 90} "The lower court erred in requiring mrs. naylor to produce documents protected by the attorney-client privilege and/or which were work product."
 {¶ 91} Appellants argue the trial court failed to quash a subpoena for invoices of BC's legal counsel and further ordered them to produce the invoices notwithstanding objections of privilege and work product. Appellants urge that Mrs. Naylor was permitted to appoint counsel for BC to represent the corporation in legal positions adverse to Pavlik. Therefore, appellants argue, BC's counsel answered to Mrs. Naylor and not to Pavlik. Consequently, appellants continue, as Pavlik was neither a client nor a person authorized to deal with counsel for BC, he had no right to demand the invoices because they contained privileged information and work product.
 {¶ 92} At the August 12, 2002 hearing, the trial court relied on the case of Beacon Journal Publishing Co. v. Bodiker (1999),134 Ohio App.3d 415, in deciding to admit the billing records and invoices in question. The Bodiker court articulated that time sheets and billing records can generally "be categorized as `routine office records' that fall outside the definition of `trial preparation records,'" and, consequently, are not covered by attorney-client privilege or work product. Id. at 427, citingState ex rel. Carpenter v. Tubb Jones (1995),72 Ohio St.3d 579, 580. Based on the trial court's reliance on this case, the court acted within it discretion in requiring Mrs. Naylor to produce the billing records and invoices requested. Appellants' 12th assignment of error is without merit.
 {¶ 93} Appellants' 13th assignment of error states:
 {¶ 94} "The lower court erred in altering the agreement of the parties by changing the requirement of an affirmative vote for the distribution of accrued salaries and instead making it discretionary."
 {¶ 95} Section 2.3 of the 1996 settlement agreement states:
 {¶ 96} "Not later than 12/31/96 a Board of Directors meeting shall be held to determine whether the compensation accruing to Albert Pavlik Jr., Eleanor Naylor, and Douglas Naylor Sr. pursuant to Section 2.2 supra should be distributed. Through 12/31/96 Albert Pavlik Jr. agrees to vote in favor of distribution of such accrued salaries. If the Board does not approve distribution, the salaries shall continue to accrue until such time as the Board does approve distribution. If a majority of the Board does approve distribution, the distributions of any compensation accruing after such date must also be approved by a majority of the Board."
 {¶ 97} Pavlik walked out of the board's December 30, 1996 meeting, and in its April 19, 2002 order, the trial court found him in contempt for violating the intent of the settlement agreement. The court ordered that Pavlik vote affirmatively for the payment of accrued salaries if the directors agreed the financial condition of BC supported these payments.
 {¶ 98} Appellants contend that, while the financial condition of BC is a component of any financial decision, under Section 2.3 of the settlement agreement a discussion of BC's financial conditions is not a prerequisite to Pavlik voting affirmatively for the distribution. Appellants argue that the Section 2.3 provisions were included in order to prevent Pavlik from backtracking on his agreement and voting to block the distribution of accrued salaries. Therefore, appellants conclude, the trial court erred in holding that Pavlik could purge his contempt by doing anything other than voting affirmatively for the distribution, as required under Section 2.3 of the settlement agreement.
 {¶ 99} In its April 19, 2002 order, the trial court stated:
 {¶ 100} " * * * It is the Court's position that individual sentences of the Settlement Agreement cannot be read in a vacuum, but that the entire section or paragraph must be considered in toto. Therefore, it would appear to the Court that Paragraph 2.3 of the Settlement Agreement would certainly contemplate discussion of the financial condition of the Corporation with respect to whether or not accrued compensation should be paid and it would imply that if the condition of the Corporation was favorable that [Pavlik] agreed to vote in favor of a distribution of such accrued salaries. The third sentence lends credence to discussing the Corporation's financial condition because it provides for a continuation of salary accruals if a distribution is not approved. The complete meaning of this paragraph is that the Directors will first, discuss the corporate financial situation; second, vote to distribute accrued salaries which [Pavlik] agreed to do but implicit in this is the feasibility of the Corporation being able to do so; and thirdly, not distribute accrued salaries if corporate finances were such as to cause such a payment to be detrimental to the well-being of the Corporation and continue accruing salaries."
 {¶ 101} The trial court interpreted Section 2.3 of the settlement agreement to implicitly require that BC's financial status be discussed before requiring the board to vote on salary distribution. This interpretation is reasonable, as a vote requiring that accrued salaries be distributed would be detrimental if BC's finances were not able to support the distribution. Therefore, the trial court acted within its discretion in setting purge conditions on Pavlik requiring him to vote for distribution of accrued salaries only if such distribution would not negatively impact BC's financial well being. Therefore, appellants' 13th assignment of error is without merit.
 {¶ 102} Appellants' 14th and 15th assignments of error share a common basis in law and fact. Accordingly, we will discuss them together. They state:
 {¶ 103} "The lower court erred, and its decision is against the manifest weight of the evidence, in holding there was insufficient evidence to support the allegation that mr. pavlik failed to deposit receipts for alleged company expenditures made by mr. pavlik."
 {¶ 104} "The lower court erred in holding there was insufficient evidence to support the allegation that mr. pavlik failed to provide a reconciliation and notice of dates and amounts of checks written to virginia exley, and such holding is further against the manifest weight of the evidence."
 {¶ 105} Section 7.3 of the settlement agreement required everyone, including Pavlik, to file receipts for all corporate expenditures in BC's central files. Appellants argue that Pavlik failed to do so, resulting in their contempt motion against him. In its April 19, 2002 order, the trial court held there was insufficient evidence to support the allegation that Pavlik failed to obey Section 7.3. Appellants, however, direct this court to Pavlik's testimony:
 {¶ 106} "Q That section [Section 7.3] essentially requires that anytime you make company expenditures you deposit receipts into the central filing system of the company, correct?
 {¶ 107} "A [Pavlik] Yes.
 {¶ 108} " * * *
 {¶ 109} "Q And you indicated in your deposition on Friday Mr. Pavlik, you had not in fact been doing that for some time, correct?
 {¶ 110} "A Yes.
 {¶ 111} "Q And just so we're clear you do in fact write checks for things other than Virginia Exley, correct?
 {¶ 112} " * * *
 {¶ 113} "A Yes, I've written checks on other things besides Virginia.
 {¶ 114} "Q And for what period of time have you been writing checks for things other than Virginia Exley and not depositing receipts into the main central files?
 {¶ 115} "A Since the settlement agreement I have written checks as I normally do for postage, for other expenses for Pelton Road, EPA; I have written those checks on that account." (4/17/02 Tr. 90-91).
 {¶ 116} Appellants contend that Section 7.3 clearly directs Pavlik to deposit his check receipts. Therefore, because he testified that he had not complied with the provisions of that section, appellants conclude the trial court erred by not holding him in contempt.
 {¶ 117} Additionally, appellants assert that the trial court's April 4, 1997 order required that Pavlik provide the Naylors with the amount of all checks issued to Ms. Exley immediately upon issuing them. Appellants once again turn to Pavlik's testimony to demonstrate Pavlik did not comply:
 {¶ 118} "Q You're aware also, are you not, that under the order that said you could write checks to Virginia Exley the order further said that however when you do so you must immediately give Mrs. Naylor notice of the check number and the amount of that check.
 {¶ 119} "A I have to plead guilty to that. I did not do that." (4/17/02 Tr. 93).
 {¶ 120} Therefore, appellants conclude, the trial court's failure to hold Pavlik in contempt on this charge was against the manifest weight of the evidence.
 {¶ 121} Pavlik argues that the record evidences his confusion and misunderstanding of the requirements of the trial court's order. He points to his testimony:
 {¶ 122} "A I have to plead guilty to that. I did not do that. But, by the same token those were the same identical checks written every — twice a month. They were identical as to the amounts. And further, Mrs. Naylor never asked me for them. This has been going on for three or four years, maybe five years." (4/17/02 Tr. 93).
 {¶ 123} A judgment supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence.Willett v. Felger (Mar. 29, 1999), 7th Dist. No. 96-CP-40;Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226. Furthermore, in considering whether a judgment is against the manifest weight of the evidence, it is important that this court be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. If the evidence is susceptible to more than one interpretation, we must construe the evidence consistently with the trial court's judgment. Gerijo, 70 Ohio St.3d at 226.
 {¶ 124} In this case, Pavlik does not assert he was unable to read or comprehend Section 7.3 of the agreement, or the April 4, 1997 order. Rather, he asserts that he had a different understanding of the terms. This assertion cannot serve as a defense to contempt. Therefore, because Pavlik explicitly testified that he had not complied with the express terms of the settlement agreement or those of the April 4, 1997 order, the trial court erred in failing to hold him in contempt. The trial court's holding is against the manifest weight of the evidence. Appellants' 14th and 15th assignments of error have merit.
 {¶ 125} Appellants' 16th assignment of error states:
 {¶ 126} "The lower court erred in failing to hold mr. pavlik in contempt for interfering with barium's payroll reporting to the internal revenue service and misrepresenting the contents and meaning of the settlement agreement to the internal revenue service."
 {¶ 127} Appellants contend that, pursuant to the trial court's February 28, 1997 and April 4, 1997 orders, Pavlik was barred from interfering with BC's payroll functions, except as to write payroll checks for Ms. Exley. Specifically, appellants argue, Pavlik represented to the IRS and Social Security Administration that Ms. Exley was a BC employee even though the settlement agreement expressly stated that her employment status was not resolved. Therefore, appellants conclude, the court erred in failing to find appellee in contempt on this charge.
 {¶ 128} Appellants correctly note that the combined effect of the February 18, 1997 and April 4, 1997 orders gives Mrs. Naylor and those under her the authority to handle all payroll checks, with the exception of those to Ms. Exley. Appellants also correctly note Pavlik testified that he sent a letter on October 18, 1999 to the IRS stating, in part:
 {¶ 129} "`As to the issue of whether or not a Pavlik family member could be hired without approval by the Naylor faction, the settlement agreement puts this dispute to a final rest as it related to Ms. Exley by having all four directors, all officers, by the corporation itself and by all shareholders, all of whom signed and approved the terms of the settlement agreement.'" (4/17/02 Tr. 105).
 {¶ 130} But Pavlik testified that his letter was in response to an inquiry by the IRS. (4/17/02 Tr. 106). Based in part on this testimony, the trial court concluded that even if Pavlik stated that Ms. Exley was an employee, this would be consistent with his position. It noted that to state otherwise would support the Naylors' position and would not be consistent with BC's past practices. (April 19, 2002 order).
 {¶ 131} Because Pavlik testified he sent the letter in question as a reply to a letter from the IRS regarding Ms. Exley's employment status, the trial court reasoned that he had to answer the letter. Further, the court concluded Pavlik had to assert his position that Ms. Exley was an employee of the corporation because, if he did not, he would give credence to appellants' position. Because the dispute surrounding Ms. Exley's employment status is unresolved, as the trial court has held repeatedly, both parties have to maintain their respective positions. Therefore, we cannot say the trial court abused its discretion in failing to hold Pavlik in contempt for asserting his position to the IRS that Ms. Exley was a BC employee. Accordingly, appellants' 16th assignment of error is without merit.
 {¶ 132} Appellants' 17th assignment of error states:
 {¶ 133} "The lower court's decision is against the manifest weight of the evidence."
 {¶ 134} Appellants assert that to the extent the trial court's April 19, 2002 and August 14, 2002 orders are inconsistent with the facts set out in their other assignments of error, the court's decision is against the manifest weight of the evidence.
 {¶ 135} Given our resolution of appellants' first 16 assignments of error and our extensive review of this case, their 17th assignment of error is without merit, except as we have already determined regarding their 9th, 14th, and 15th assignments of error.
 {¶ 136} For the reasons stated above, the trial court's judgment is hereby reversed and remanded for further proceedings in accordance with law and consistent with this opinion regarding appellants' 9th, 14th, and 15th assignments of error and affirmed as to all other assignments of error.
Waite, P.J., and DeGenaro, J., concur.
[1] { ¶ a} Stating in pertinent part:
{¶ b}"With respect to the Order of April 4, 1997, the same is hereby amended NUNC PRO TUNC to include the clarification that the payment of money to Virginia Exley by Albert Pavlik, Jr., is not to be interpreted in any way as modifying the settlement agreement as it applies to Virginia Exley and with respect to whether or not she is an employee of Barium and Chemicals, Inc. Albert Pavlik, Jr., has been paying Virginia Exley over the objections of the Naylors because of Naylors' position that she is not an employee of the corporation. The authorization by the Court that Albert Pavlik, Jr., may continue to pay Virginia Exley is not now nor was it ever intended to modify or change in any way the positions of the respective parties."
[2] Pavlik did, at one point, obtain a checkbook from Sky Bank, but the checks he wrote were dishonored because he was not an authorized signatory on the account.
[3] This section merely states that Ms. Exley, along with other family employees, must be paid on a going forward basis as of April 1, 1996.